IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAH DUPRI BARRON,<br><br>                    Petitioner,<br><br>      vs.<br><br>RANDY GROUNDS, Warden, Salinas<br>Valley State Prison,[1]<br><br>                    Respondent. | No. 2:12-cv-0491-JKS<br><br>MEMORANDUM DECISION |

Isaiah Dupri Barron, a state prisoner *pro se*, timely filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Barron is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Salinas Valley State Prison. Respondent has answered, and Barron has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

The facts, as summarized by the California Court of Appeal on direct appeal, are as follows:

> Norik Abramyan (Norik) was shot and killed by two assailants as he sat in his car in the parking lot of a Hollywood Video store. The two assailants, defendant Arthur James Battle III and Jason Dillingham, the latter not involved in this proceeding, were hired by defendant Isaiah Dupree Barron, who was hired by Norik's son, defendant Vardan Abramyan (Abramyan), to commit the murder. Convicted by separate juries of conspiracy to commit murder and murder with special circumstances, the three defendants appeal. We consolidated the appeals for argument and decision only.
> . . . .
> Abramyan approached Barron, an acquaintance, about killing Norik. He agreed to pay Barron $4,000 for the killing and, a few days before the killing, gave Barron $200. The evening before the killing, Abramyan gave Barron an additional $1,800. Abramyan

---

      [1]      Randy Grounds, Warden, Salinas Valley State Prison, is substituted for Martin Biter, Warden, Kern Valley State Prison.  FED. R. CIV. P. 25(c).

asked Barron if Barron was going to commit the killing alone, and Barron replied, "Don't worry about it."

Barron recruited Battle and Dillingham to assist him in killing Norik. He offered, and eventually paid, each of them $500.

On July 30, 2006, Lawrence Stringer accompanied Barron, Battle, and Dillingham to a liquor store. Barron told Stringer that they were going to kill someone for money. Stringer said that he did not want to be involved. Barron, Battle, and Dillingham each had a handgun.

The car, carrying Barron, Battle, Dillingham, and Stringer, stopped at an apartment complex. All but Stringer left the car and walked into the complex where they met with Abramyan. A short time later, Barron, Battle, and Dillingham returned to the car. Norik drove up and walked into the complex. Barron, Battle, and Dillingham followed on foot, but they soon came running back to the car and said that they had not shot Norik because there were other people around.

Abramyan called Barron by cell phone, and they agreed to meet at the Hollywood Video store where Abramyan would bring Norik. Barron, Battle, Dillingham, and Stringer drove to the Hollywood Video store and parked behind the store. Barron, Battle, and Dillingham agreed that Battle and Dillingham would do the shooting and Barron would be the driver.

Abramyan and Norik arrived at Hollywood Video in a white Kia and went into the store. After a while, they returned to the car, but Abramyan told Norik that he had to go back into the store to use the restroom. Abramyan again returned to the car but went back into the store, telling Norik he left his cell phone in the restroom.

Meanwhile, Battle and Dillingham walked around to the front of the store, while Barron and Stringer waited in the car behind the store. After waiting for a while, Barron drove around to the front of the store. He spoke to Battle and Dillingham, who were smoking cigars, and encouraged them to shoot Norik. Barron then drove back behind the store to wait. After a few more minutes, Barron told Stringer to go get Battle and Dillingham because, in Stringer's words, "they weren't going to do it." Stringer got out of the car, but before he could walk around the car he heard gunshots.

Battle and Dillingham had waited in the parking lot for a total of about 30 minutes, anxious and pacing, with gloves on and bandanas around their necks. When Norik was alone in the car, Battle and Dillingham put the bandanas up over the lower part of their faces, drew handguns, and ran toward the car, with Dillingham ahead of Battle. They stopped next to the car, on the driver's side, and shot at Norik. Battle and Dillingham then returned to the car driven by Barron, and they sped away.

Norik died at the scene.

After the murder, Abramyan arranged to have the last $2,000 delivered to Barron.

*People v. Battle*, 129 Cal. Rptr. 3d 828, 834-35 (Cal. Ct. App. 2011) (footnote omitted).

On July 7, 2009, Barron, Battle and Abramyan were charged by amended information with conspiracy to commit murder in violation of California Penal Code §§ 182(a)(1) and 187(a)

-2-

(Count One), and the murder of Norik Abramyan in violation of California Penal Code § 187(a) (Count Two). It was further alleged as a special circumstance with respect to both counts that Barron was a principal and was armed with a firearm during the commission of the offenses. It was also further alleged with respect to Count Two that the murder was intentional and carried out for financial gain and that the victim was intentionally killed while lying in wait.

All defendants pled not guilty. At trial, Barron contended that he had changed his mind about killing Norik and tried to stop the murder from happening. The juries found each defendant guilty on both counts and found all enhancements and special circumstances to be true.

The trial court sentenced Barron to life without the possibility of parole on Count Two, with an additional year for the arming of the principal. The court imposed an indeterminate term of twenty-five years to life on Count One, with an additional year for the arming of a principal. The sentence on Count One was stayed pursuant to California Penal Code § 654.

Through counsel, Barron directly appealed, arguing that: 1) the trial court erred by not *sua sponte* instructing the jury that the special circumstance allegations could not be found true unless the jury determined that Barron harbored the intent to kill at the time of the shooting, and that, in the alternative, trial counsel was ineffective for failing to request this instruction; 2) the trial court erred with respect to Count Two by failing to *sua sponte* instruct the jury that a defendant may claim the defense of withdrawal if, "despite his best efforts, he is unable to contact the other participants to prevent the commission of the crime," and, in the alternative, that trial counsel was ineffective for failing to request such an instruction; 3) the trial court erred by failing to *sua sponte* instruct the jury that Abramyan and Battle "were accomplices as a matter

of law or, at least, could be considered accomplices, whose testimony should be viewed with caution"; 4) the trial court erred with respect to Count One by failing to instruct on any of the elements of conspiracy; and 5) the trial court committed a jurisdictional sentencing error in imposing a parole revocation fine. The Court of Appeals denied Barron's instructional error claims in a reasoned, published opinion. The court granted Barron's appeal that the parole revocation fine was improper and struck the imposition of that fine.

Through counsel, Barron raised these same four instructional error claims, as well as a fifth claim that an instructional error is not forfeited by failing to object if the error would affect a defendant's substantial rights, in his petition for review filed with the California Supreme Court. The California Supreme Court denied the petition.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Barron asserts four instructional errors–namely, that: 1) the trial court failed to *sua sponte* instruct the jury that the special circumstances of financial gain and lying in wait could only be found true if Barron harbored the intent to kill at the time of the homicide, and, in the alternative, trial counsel was ineffective for failing to request such an instruction; 2) the trial court failed to properly instruct the jury that a defendant may assert the defense of withdrawal from a homicide where he unsuccessfully attempted to notify other co-defendants of his withdrawal, and, in the alternative, that trial counsel was ineffective for failing to request such an instruction; 3) the trial court failed to properly instruct the jury with respect to Count Two that Barron's co-defendants were accomplices as a matter of law and that their testimony should be viewed with caution; and 4) the trial court erred in failing to instruct the jury on the elements of conspiracy.

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.   Procedural default

Respondent is correct in asserting that Claims One through Three are procedurally defaulted because trial counsel failed to object at trial. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (citation omitted). The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming

the denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial. *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). Because the Court of Appeals held that Claims One through Three were forfeited under California's contemporaneous objection rule, these claims may be deemed procedurally defaulted.

If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if the petitioner shows: 1) good cause for his failure to exhaust the claim; and 2) prejudice from the purported constitutional violation; or 3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). A trial attorney's ignorance or inadvertence does not amount to cause and prejudice. *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986).

It is firmly established under California law that "habeas corpus will not lie as a substitute for appeal . . . nor as a second appeal." *In re Harris*, 855 P.2d 391 (Cal. 1993) (citing *In re Foss*, 519 P.2d 1073 (Cal. 1974); *In re Terry*, 484 P.2d 1375 (Cal. 1971); *In re Waltreus*, 397 P.2d 1001 (Cal. 1965); *In re Spears*, 204 Cal. Rptr. 333 (Cal. Ct. App. 1984); *In re Wagner*, 173 Cal. Rptr. 766 (Cal. Ct. App. 1981)). Thus, Barron's claims are procedurally barred unless he can show cause and prejudice.

Barron has failed to assert any cause or prejudice. However, recognizing that Barron is proceeding *pro se* and that his pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court nonetheless will address the merits of the claim.

B.   Merits

   Claim One: Intent to kill of aider and abettor

-7-

Barron first argues that evidence introduced at trial demonstrated that he no longer had the intent to kill at the time the homicide was committed and therefore the trial court failed to *sua sponte* instruct the jury that the special circumstances of financial gain and lying in wait could only be found true if Barron harbored the intent to kill at the time of the homicide. Barron argues in the alternative that trial counsel was ineffective for failing to request such an instruction.

After initially rejecting this claim as forfeited on direct appeal, the Court of Appeals reached the merits as follows:

> Barron's proposed interpretation is contrary to the language of the aiding-and-abetting special circumstance statute and does not find support in the cases he cites.
> [California] Penal Code section 190.2 is the special circumstances statute. Subdivision (c) provides for the intent-to-kill requirement for an aider and abettor, as follows: "Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4."
> Consistent with this subdivision, the trial court instructed Barron's jury: "If you decide that the defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstances of murder for hire and lying in wait, you must also decide whether the defendant acted with intent to kill. [¶] In order to prove these special circumstances for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor or a member of a conspiracy, the People must prove that the defendant acted with the intent to kill. [¶] . . . [¶] If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstances to be true. . . ."
> Barron did not object to the special circumstances instructions. "Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights. [Citations.] The question is whether the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal. 2d 818 [299 P.2d 243]. [Citation.]" (*People v. Anderson* (2007) 152 Cal. App. 4th 919, 927, 61 Cal. Rptr. 3d 903 (*Anderson*).) We find no error, much less a miscarriage of justice.
> "'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning.

-8-

[Citation.]  The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citation.]" (*People v. Robinson* (2010) 47 Cal. 4th 1104, 1138, 104 Cal. Rptr. 3d 727, 224 P.3d 55.)

The plain language of the statute leads to only one interpretation–the special circumstances statute requires that an aider and abettor have an intent to kill when he aids and abets, not necessarily when the actual killing takes place.  Despite this plain language, however, Barron argues that the "framework" of the special circumstances statute, Penal Code section 190.2, provides for special circumstances liability only if the aider and abettor intended to kill at the time the killing was committed.

Subdivision (b) of Penal Code section 190.2, which relates to the actual killer only, states that "an actual killer . . . need not have had any intent to kill *at the time of the commission of the offense which is the basis of the special circumstance* in order to suffer death or confinement in the state prison for life without the possibility of parole."  (Italics added.)  Noting the difference in wording between subdivision (b) (concerning actual killers) and subdivision (c) (concerning aiders and abettors), Barron argues: "Reading the statutory framework as a whole, and avoiding a reading that creates surplusage [citation], it is evident that the italicized modification of 'intent to kill' in subdivision (b) must carry over to the meaning of 'intent to kill' in subdivision (c). . . . "

Barron's argument is backwards.  Because the Legislature included the language "at the time of the commission of the offense" in subdivision (b) but left it out of subdivision (c), we must presume the Legislature intended to leave it out. (*O'Grady v. Superior Court* (2006) 139 Cal. App. 4th 1423, 1443, 44 Cal. Rptr. 3d 72.)  Therefore, the canons of statutory interpretation do not support Barron's argument.

Likewise, Barron's citation to authority fails to support his argument.  In *People v. Freeman* (1994) 8 Cal. 4th 450, 34 Cal. Rptr. 2d 558, 882 P.2d 249, the defendant shot and killed the victim while committing a robbery.  (*Id.* at p. 470, 34 Cal. Rptr. 2d 558, 882 P.2d 249.)  Convicted of murder with a robbery special circumstance, the defendant asserted on appeal that the court's instructions allowed the jury to find true the special circumstance without concluding that the defendant intended to kill the victim at the time he shot the victim.  (*Id.* at p. 507, 34 Cal. Rptr. 2d 558, 882 P.2d 249.)  The Supreme Court rejected the argument because the jury would not have understood the instructions to allow it to find true the special circumstance if the defendant did not intend to kill the victim when he shot him. (*Ibid.*)

*Freeman* is unhelpful to Barron.  As noted, subdivision (c) of Penal Code section 190.2 requires that the aider and abettor intended to kill only at the time of the aiding and abetting, not at the time of the actual killing.  *Freeman,* on the other hand, involved an actual killer, to whom subdivision (c) was inapplicable.  *Freeman* is distinguishable because Barron was an aider and abettor, not the actual killer.

Barron's remaining arguments on this issue essentially urge us to ignore the plain language of the statute and, for that reason, are unconvincing.  Barron's jury instruction contention is without merit.

*Battle*, 129 Cal. Rptr. 3d 828 at 840-41. The California Supreme Court denied Barron's petition for review.

Barron's claim that the court's instruction was erroneous and that it should have *sua sponte* instructed the jury that Barron need to have the intent to kill at the time the homicide was committed is without merit. "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 502 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the state evidentiary rules.")); *see also Bradshaw*, 546 U.S. 74 at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Horton v. Mayle*, 408 F.3d 570, 576 (9th Cir. 2005) ("If a state law issue must be decided in order to decide a federal habeas claim, the state's construction of its own law is binding on the federal court."). This Court's review is therefore limited to "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Barron, however, may not transform his state instructional error claim into a federal claim by simply asserting a violation of his constitutional rights. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). This Court is bound by the California Court of Appeals' determination that the instruction as given was consistent with state law in the absence of any due process violation, and Barron is not entitled to relief on this claim.

Barron's claim that his trial counsel was ineffective for failing to request such an instruction is likewise meritless. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was

-10-

deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Barron must therefore show both that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

Barron cannot establish that counsel's performance was deficient, and therefore his claim must fail. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one). Counsel's choices must be *objectively* reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000). As the appellate court found, the instruction on intent was consistent with California law. Any request by trial counsel for the jury instruction Barron proposes would have been fruitless, and counsel's failure to object to the instruction was reasonable under the circumstances. Counsel's failure to raise this meritless issue cannot amount to an ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (counsel does not have an obligation to raise every nonfrivolous or weak argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (counsel's failure to raise a weak issue did not constitute ineffective assistance).

Barron cannot therefore prevail on his claims that either the trial court should have given or trial counsel should have requested an instruction that the jury needed to find that Barron, as an aider and abettor, harbored the intent to kill at the time the homicide was committed.

<u>Claim Two: Withdrawal defense</u>

Barron next argues that the trial court failed to *sua sponte* instruct the jury that a defendant may assert a defense of withdrawal where he wanted to withdraw but was unable to communicate that to the other participants in the commission of the crime. Barron alternatively argues that trial counsel was ineffective for not requesting this instruction.

After initially concluding that this claim was forfeited for failure to object, the Court of Appeals rejected this claim on the merits as follows:

> The trial court instructed the Barron jury concerning the withdrawal defense using CALCRIM No. 401, which states, in pertinent part:
>
> "A person who aids and abets a crime is not guilty of that crime if he or she withdraws before the crime is committed. To withdraw, a person must do two things:
>
> "1. He must notify everyone else he knows is involved in the commission of the crime that he is no longer participating. The notification must be made early enough to prevent the commission of the crime.
>
> "AND
>
> "2. He must do everything reasonably within his or her power to prevent the crime from being committed. He or she does not have to actually prevent the crime.
>
> "The People have the burden of proving beyond a reasonable doubt that the defendant did not withdraw. If the People have not met this burden, you may not find the defendant guilty under an aiding and abetting theory."
>
> Barron did not object to this instruction; therefore, he forfeited review of it unless he can show that it resulted in a miscarriage of justice. (*Anderson, supra,* 152 Cal. App. 4th at p. 927, 61 Cal. Rptr. 3d 903.) As we explain, there was no miscarriage of justice.
> Barron finds fault in the instruction, as given, because it does not allow for the withdrawal defense if the defendant attempts to notify the other participants but such notification is impossible. This argument is without merit because the instruction properly states the law–that is, (1) the aider and abettor must notify everyone else he knows is involved in the commission of the crime that he is no longer participating and (2) that notification must be made early enough to prevent the commission of the crime. (See *People v. Norton* (1958) 161 Cal. App. 2d 399, 403, 327 P. 2d 87.) Waiting too long before attempting to notify the other participants, making it impossible to accomplish the notification, does not qualify for the withdrawal defense. Even assuming Barron had a change of heart, he waited too long, as a matter of law, before attempting to

> complete the steps necessary for a withdrawal defense. It was too late to notify the other participants and too late to prevent the crime. It was too late to withdraw.
>     Accordingly, the trial court had no duty to instruct Barron's jury concerning impossibility, as it relates to the notification prong of the withdrawal defense. Additionally, Barron's alternative argument that counsel was ineffective for failing to object to the withdrawal defense instruction is without merit.

*Battle*, 129 Cal. Rptr. 3d at 841-42. The California Supreme Court denied Barron's petition for review.

Barron's claim that the trial court should have *sua sponte* instructed the jury that Barron was entitled to a withdrawal instruction where he could not have notified other participants in the crime of his intended withdrawal is without merit. Again, "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72; *see also Bradshaw*, 546 U.S. at 76; *Horton*, 408 F.3d at 576. Barron cannot transform this state instructional error claim into a federal claim by simply asserting a violation of his constitutional rights. *See Langford*, 110 F.3d at 1389. This Court is bound by the state court's interpretation that the instruction as given did not violate state law.

In addition, Barron cannot establish that counsel's failure to request the instruction amounted to a deficient performance. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one). The fact that counsel did not request Barron's version of a withdrawal defense instruction was objectively reasonable. *Flores-Ortega*, 528 U.S. at 479. Because the instruction on intent was squarely consistent with California law, any effort by trial counsel to procure Barron's suggested instruction would have been meritless. *See Barnes*, 463 U.S. at 751-52; *Keeney*, 882 F.2d at 1434-35. Barron cannot therefore prevail on his claim that either the trial court should have

given or trial counsel should have requested an instruction that he was entitled to a withdrawal defense where he did not communicate his intent to withdraw to the other participants.

Claim Three: Viewing the accomplice testimony with caution

Barron next argues that Abramyan and Battle were accomplices and therefore the trial court should have *sua sponte* instructed the jury that their "testimony should be viewed with caution."

After initially concluding that this claim was forfeited for failure to object, the Court of Appeals rejected it on the merits as follows:

> Even assuming the trial court should have instructed Barron's jury that Battle and Abramyan were accomplices as a matter of law and that it should view their testimony with caution, there was no miscarriage of justice.
> "An accomplice is 'one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.' ([Pen.Code,] § 1111.) [¶] 'The general rule is that the testimony of all witnesses is to be judged by the same legal standard. In the case of testimony by one who might be an accomplice, however, the law provides two safeguards. The jury is instructed to view with caution testimony of an accomplice that tends to incriminate the defendant. It is also told that it cannot convict a defendant on the testimony of an accomplice alone.' [Citations.] [¶] Error in failing to instruct the jury on consideration of accomplice testimony at the guilt phase of a trial constitutes state-law error, and a reviewing court must evaluate whether it is reasonably probable that such error affected the verdict. [Citation.]" (*People v. Williams* (2010) 49 Cal. 4th 405, 455-456, 111 Cal. Rptr. 3d 589, 233 P.3d 1000.)
> The trial court gave an instruction identifying Stringer and Mikhail Karsliyev as possible accomplices whose testimony should be viewed with caution. Even assuming the court should have included Battle and Abramyan as accomplices in that instruction, it is not reasonably probable the error affected the verdict because (1) the court instructed the jury thoroughly on evaluating witness credibility and (2) the instruction on viewing accomplice testimony with caution did not exclude its application to Battle and Abramyan.
> The court instructed the jury using CALCRIM No. 226, concerning the evaluation of witness testimony. The jury was instructed, among other things, to use its common sense and experience, to consider anything tending to prove or disprove the truth or accuracy of the testimony and whether the testimony was influenced by bias or prejudice or a personal interest in the case, and to determine whether the witness engaged in conduct reflecting on believability. This instruction, alone, was sufficient in this case to

-14-

> prevent prejudice for failure to identify Battle and Abramyan as accomplices whose testimony should be viewed with caution because the participation of Battle and Abramyan in the murder was well established.
>
> After instructing the jury on how to determine whether Stringer and Karsliyev were accomplices, the court gave general instructions how to treat accomplice testimony. Of note here, the court stated: "Any testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the other evidence." Although the trial court instructed the jury to determine whether Stringer and Karsliyev were accomplices, it did not limit the jury from determining that Battle and Abramyan were accomplices and from applying the caution concerning accomplice testimony.
>
> Barron, therefore, fails to establish prejudicial error in the court's accomplice instructions.

*Battle*, 129 Cal. Rptr. 3d at 842-43.  The California Supreme Court denied Barron's petition for review.

"A challenged instruction violates the federal constitution if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionality relevant evidence." *Allen v. Woodford*, 395 F.3d 979, 996 (9th Cir. 2005) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990) (internal quotation marks omitted)).  Even if the trial court was mistaken in failing to explicitly name Battle and Abramyan as accomplices, any mistake was cured by the instructions when read as a whole. *Id*. (jury instructions must be reviewed as a whole).  Here, the jury was specifically instructed that accomplice testimony should be viewed with caution and that witness testimony in general should be evaluated for bias, prejudice, and believability.  Viewing the instructions in their entirety, any error by the trial court was harmless and did not rise to a constitutional violation.  Barron therefore cannot succeed on this claim.

Claim Four: Conspiracy

Barron lastly argues that the trial court gave but then struck the instruction on the elements of conspiracy.

The Court of Appeals denied Barron relief on this claim as follows:

> To the contrary, the trial court properly gave the conspiracy instruction and then referenced the conspiracy instruction in a later instruction. It was the reference in the later instruction that the trial court struck, not the conspiracy instruction itself.
> The trial court instructed the jury on the elements of conspiracy, using CALCRIM No. 563. Later, the court instructed the jury concerning murder by lying in wait, using CALCRIM No. 540A. Although the next instruction in the packet given to the jury was CALCRIM No. 540B–"Murder by Lying in Wait: First Degree–Co-participant Allegedly Committed Fatal Act," it appears that the trial court skipped that instruction in its initial oral instructions.
> As it appeared in the instruction packet to be sent into the jury room, CALCRIM No. 540B read, in part: "To decide whether the defendant was a member of a conspiracy to commit a crime, please refer to the separate instruction 417, 418, 419, 420 and 563."
> Before the jury retired to deliberate, the court made the following statement to the jury:
> "All right. Jury members, before we begin I read you some general instructions. There's one I want to correct somewhat.
> "It deals with–in your packet that would be 540-B, murder by lying in wait first degree co-participant allegedly committing fatal acts. [Apparently, the court did not realize it had skipped CALCRIM No. 540B in the oral presentation.] And it should be on page 48 in your instruction packet. And we're dealing with the next to last paragraph where I tell you to look for certain instructions.
> "And it should read when you see 419 and 420 there should be a period and 563 is stricken.
> "Everyone can remember that. Well, if you can't remember it's not going to refer to 563. I just want to let you know that. Because when I read them to you it said 563."
> The court sent a note into the jury room which stated: "The Court instructed the jury not to consider instruction 563. Please disregard that instruction as it was in error. Instruction 563, which deals with Count One, is located on numerical pages 39 and 40 of your instructions."
> Barron contends that this series of instructions and amendments instructed the jury to disregard the court's instructions on conspiracy and, therefore, the jury was not instructed on the elements of conspiracy, which is reversible per se. We disagree that the series of instructions amounted to a direction to the jury to disregard CALCRIM No. 563 as a guide to determining whether the elements of a conspiracy were present.
> We review the instructions to determine whether there is a reasonable likelihood that the jury would have understood them correctly. (*People v. Cole* (2004) 33 Cal. 4th

> 1158, 1212, 17 Cal. Rptr. 3d 532, 95 P.3d 811.)  "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." (*Estelle v. McGuire* (1991) 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385, 399, quoting *Cupp v. Naughten* (1973) 414 U.S. 141, 147, 94 S. Ct. 396, 400-01, 38 L. Ed. 2d 368, 373.)
>
> Here, although the court's written instruction was ambiguous concerning whether to disregard the reference to CALCRIM No. 563 in CALCRIM No. 540B or to disregard CALCRIM No. 563 altogether, the oral instruction to the jury made it clear that it was limited to the reference in CALCRIM No. 540B only.  The court told the jury: "And it should read when you see 419 and 420 there should be a period and 563 is stricken." Furthermore, there is no evidence in the record that the jury felt it had no definition of conspiracy from which to work.  Accordingly, Barron's claim of instructional error is without merit.

*Battle*, 129 Cal. Rptr. 3d at 843-44.  The California Supreme Court denied review.

"When inquiring whether an ambiguous jury instruction rises to the level of constitutional error we ask whether, considered in the context of the instructions as a whole and the trial record, there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." *Ho v. Carey*, 332 F.3d 587, 592 (9th Cir. 2003) (quoting *Estelle*, 502 U.S. at 72) (internal quotation marks, brackets and ellipses omitted).  "When a jury instruction omits a necessary element of the crime, constitutional error has occurred." *Id.* Viewing the instructions as a whole, the state appellate court's determination that there was no instructional error is not contrary to or an unreasonable application of federal law.  As the appellate court noted, the jury was orally instructed on all elements of the crime of conspiracy, and there is no evidence that the trial court's efforts to correct its written instructions amounted to a direction to disregard that instruction.  Accordingly, Barron is not entitled to relief on this claim.

## V. CONCLUSION AND ORDER

Barron is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 19, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge